# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

JOHN RAY BUECHE                                       CIVIL ACTION

VERSUS                                                NO. 16-550-JWD-EWD

CAROLYN W. COLVIN,
ACTING COMMISSIONER,
SOCIAL SECURITY ADMINISTRATION


## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein.  Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on December 29, 2017.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

JOHN RAY BUECHE                                      CIVIL ACTION

VERSUS                                               NO. 16-550-JWD-EWD

CAROLYN W. COLVIN,
ACTING COMMISSIONER,
SOCIAL SECURITY ADMINISTRATION

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff John Ray Bueche brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of Carolyn W. Colvin, acting Commissioner of Social Security (the "Commissioner"), denying his application for Title XVI supplemental security income and Title II disability insurance benefits.[1]  Based on the applicable standard of review under § 405(g) and the analysis that follows, it is the recommendation of this Court that the Commissioner's decision be **AFFIRMED** and this action be **DISMISSED WITH PREJUDICE.**

## I.      Procedural Background[2]

On September 11, 2013, Plaintiff protectively filed applications for disability insurance benefits under Title II and supplemental security income under Title XVI, alleging disability

---

[1] When Plaintiff filed his Complaint on August 20, 2016 (R. Doc. 2), Carolyn W. Colvin was Acting Commissioner of the Social Security Administration.  However, on January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security.  Although Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit, no further action is needed because the last sentence of 42 U.S.C. § 405(g) provides, "Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office."  42 U.S.C. § 405(g).

[2] References to documents filed in this case are designated by "R. Doc. at [page numbers]."  References to the record of administrative proceedings filed in this case are designated by "AR [page numbers]."

beginning January 1, 2009.[3]  The claims were initially denied on February 12, 2014[4] and Plaintiff

filed a request for a hearing on March 14, 2014.[5]  A hearing was held on October 23, 2014, at

which Plaintiff, represented by counsel, appeared and testified.[6]  A vocational expert, Christina

McCaffrey, also appeared and testified.[7]  An unfavorable decision was rendered by the

Administrative Law Judge ("ALJ") on February 27, 2015.[8]  On March 19, 2015, Plaintiff appealed

the ALJ's decision.[9]  On June 17, 2016, the Appeals Council of the Office of Disability

Adjudication and Review ("Appeals Council") denied Plaintiff's request for review of the ALJ's

decision.[10]

On August 20, 2016, Plaintiff timely filed a Complaint in this Court.[11]  Accordingly,

Plaintiff exhausted his administrative remedies with regard to his applications before filing this

action for judicial review and the ALJ's decision is the Commissioner's final decision for purposes

of judicial review.  *See*, 20 C.F.R. § 404.981.

## II.    Standard of Review

This Court's review of the Commissioner's decision denying disability benefits is limited

to an inquiry into whether there is substantial evidence to support the findings of the Commissioner

and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Richardson v. Perales*,

402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Myers v. Apfel*, 238 F.3d 617, 619

(5th Cir. 2001).  If the Commissioner fails to apply the correct legal standards, or provide a

reviewing court with a sufficient basis to determine that the correct legal principles were followed,

---

[3] R. Doc. 10 at p. 1 (*citing* AR pp. 145-60).
[4] AR pp. 98-101.
[5] AR pp. 161-62.
[6] AR pp. 43-69.
[7] AR pp. 60-65.
[8] AR pp. 18-32.
[9] AR p. 14.
[10] AR pp. 1-6.
[11] R. Doc. 2.

it is grounds for reversal.  *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1981); *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981).

If substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed.  *Richardson*, 402 U.S. at 390, 91 S.Ct. at 1422; *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Bradley*, 809 F.2d at 1057 (quoting *Deters v. Secretary of Health, Educ. & Welfare*, 789 F.2d 1181, 1185 (5th Cir. 1986)).  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.  *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)).  Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side.  *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). In applying the substantial evidence standard the court must review the entire record as a whole, but may not reweigh the evidence, try the issues de novo, or substitute its judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision.  *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

### III.    The ALJ's Disability Determination

A social security disability claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1505, 416.905.  In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.  *See,* 20 C.F.R. § 404.1520(a)(4).  Using

the five-step evaluation process, the Commissioner must determine whether: (1) the claimant is currently engaged in substantial gainful activity; (2) the claimant has a severe impairment(s); (3) the impairment(s) meets or equals the severity of a listed impairment in appendix 1, subpart P of 20 CFR part 404; (4) the impairment(s) prevents the claimant from performing past relevant work; and (5) the impairment(s) prevents the claimant from doing any other work. *Masterson*, 309 F.3d at 271.

The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability. If the claimant is successful in sustaining his burden at each of the first four levels then the burden shifts to the Commissioner at step five. At step five, the Commissioner must prove, considering the claimant's residual functional capacity, age, education, and past work experience, that he or she is capable of performing other work. 20 C.F.R. § 404.1520(g)(1). If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

Here, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act from the alleged onset date of January 1, 2009 through February 27, 2015, the date of the ALJ's decision.[12] At step one of the analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 1, 2009.[13] At the second step, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine, polysubstance abuse, mood disorder and bipolar disorder.[14] At step three of the analysis, the ALJ found that Plaintiff's impairments or

---

[12] AR pp. 19, 20 and 32. The ALJ also found that for purposes of his application for disability insurance benefits, Plaintiff met the insured status requirements through March 31, 2010. AR pp. 18 and 20.
[13] AR p. 20.
[14] AR p. 21.

combination of impairments did not meet or medically equal the required criteria for any listed impairment.[15]  The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) with the following nonexertional limitations: (1) no climbing of ladders, ropes or scaffolds; (2) only occasional stooping, kneeling, crouching, crawling and overhead reaching; (3) no working on vibrating surfaces; and (4) the work must be of a simple routine nature.[16]

Based on the foregoing RFC determination, the ALJ found that Plaintiff could not perform any past relevant work at step four of the analysis.[17]  Proceeding to step five, the ALJ found that based on the testimony of the vocational expert, as well as Plaintiff's age, education, work experience and RFC, there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform.[18]  The vocational expert testified that someone with Plaintiff's age, education, work experience, and RFC would be able to work as an inspector/sorter/tester/sampler/weigher, a parking lot attendant and as a protective service worker and that each occupation had a large number of jobs available in both the local and national economy.[19]  As such, the ALJ concluded that Plaintiff was not disabled from January 1, 2009 through February 27, 2015, the date of the ALJ's decision.[20]

## IV.  Plaintiff's Allegations of Error

Plaintiff alleges that the ALJ committed the following errors that require reversal of the ALJ's decision: (1) the ALJ erred by failing to acknowledge or give appropriate weight to the

---

[15] AR pp. 21-22.
[16] AR pp. 22-30.
[17] AR p. 30.
[18] AR pp. 31-32.
[19] AR p. 31.  The vocational expert also included sedentary jobs, such as protective service worker, cashier and receptionist/information clerk, which also have a large number of jobs available in both the local and national economy.  *Id.*
[20] AR p. 32.

medical opinion of Plaintiff's treating physician, Harold Brandt, M.D.; and (2) the ALJ erred in the weight given to the medical opinion of an independent medical examiner, John Watermeier, M.D., an orthopedic surgeon.[21]   The Commissioner maintains that the decision to deny Plaintiff benefits was supported by substantial evidence and should be affirmed.[22]

## V.    Analysis

### A.  Substantial Evidence Supports the ALJ's RFC Determination

Although not a model of clarity, Plaintiff's second assignment of error alleges that the ALJ's RFC determination is not supported by substantial credible evidence of record because the ALJ found that Plaintiff "can perform at a physical activity level that exceeds the activity level to which Dr. Watermeier restricted plaintiff."[23]   Plaintiff claims that the ALJ sent him to an orthopedic surgeon (Dr. Watermeier) for an independent medical evaluation after the October 23, 2014 administrative hearing.[24]   Plaintiff contends that because Dr. Watermeier is a state agency physician, the ALJ was required to explain the weight given to Dr. Watermeier's opinion under SSR 96-6p.  Instead, Plaintiff asserts the ALJ rejected Dr. Watermeier's medical opinion without valid cause, even though Dr. Watermeier's opinions are supported by the objective medical evidence obtained during his examination of Plaintiff, as well as other MRI evidence of record.[25] Plaintiff further asserts that if the ALJ questioned the validity of Dr. Watermeier's opinion, the ALJ should have re-contacted Dr. Watermeier in accordance with 20 C.F.R. § 404.1512(e) to discuss his findings and the restrictions he placed on Plaintiff.[26]

---

[21] R. Doc. 10 at p. 10.
[22] *See generally,* R. Doc. 12.
[23] R. Doc. 10 at p. 16.
[24] R. Doc. 10 at p. 17 (*citing* AR p. 68).
[25] R. Doc. 10 at p. 17.
[26] R. Doc. 10 at p. 18.

In response, the Commissioner asserts that the ALJ discussed Dr. Watermeier's findings in detail and provided specific reasons as to why Dr. Watermeier's opinion regarding Plaintiff's physical limitations was not supported by the medical evidence of record.[27]  The Commissioner maintains that the treatment notes in the record do not support the degree of limitation expressed in Dr. Watermeier's opinion.[28]  The Commissioner further urges the Court to reject Plaintiff's argument that the ALJ should have re-contacted Dr. Watermeier for clarification regarding his opinion.  The Commissioner points out that the ALJ is responsible for weighing the relevant evidence and determining the best way to resolve any inconsistencies therein, noting that the ALJ retains the discretion to determine whether re-contacting the medical source is necessary.[29]

## 1.   The ALJ's Review of the Evidence of Record

The ALJ "is responsible for assessing the medical evidence and determining the claimant's residual functional capacity."  *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985).  The ALJ's RFC decision can be supported by substantial evidence even if the ALJ does not specifically discuss all the evidence that supports his or her decision or all the evidence that he or she rejected. *Falco v. Shalala*, 27 F.3d 160, 163-64 (5th Cir. 1994).  A reviewing court must defer to the ALJ's decision when substantial evidence supports it, even if the court would reach a different conclusion based on the evidence in the record.  *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).  The court "may only scrutinize the record" and take into account whatever fairly detracts from the substantiality of the evidence supporting the ALJ's decision.  *Leggett*, 67 F.3d at 564.  Accordingly, a "no substantial evidence" finding is appropriate

---

[27] R. Doc. 12 at pp. 7-8.
[28] *Id*. at pp. 9-10 (*citing* AR pp. 292-590).
[29] R. Doc. 12 at p. 11.

only if there is a conspicuous absence of credible evidentiary choices or no contrary medical findings to support the ALJ's decision. *Johnson*, 864 F.2d at 343-44.

Here, the ALJ's RFC determination is supported by substantial evidence. In determining Plaintiff's RFC, the ALJ first considered the Plaintiff's testimony from the October 23, 2014 administrative hearing, during which Plaintiff testified that he is 46 years old and has a high school education and vocational training in instrumentation.[30] Plaintiff testified that he lives with his parents and that he is unable to work because his neck and back are in "bad shape," explaining that he has "had problems with it for years."[31] Plaintiff testified that he had surgery on his neck and back (cauterizing of the nerves) to "kill the nerves in my back," that he has received about 11 injections in his lower back and that his last procedure was in 2011.[32] Plaintiff acknowledged that he had not received any treatment for his back since 2011 due to lack of insurance and that he was given home exercises, but that they made his condition worse.[33]

Plaintiff also testified that he does not do much around the house, he stays on the sofa for six to eight hours a day and that he tries to help his mother as much as possible by wiping down the counter/table and making a sandwich.[34] Plaintiff further testified that he cannot do the laundry or dishes, he attends church every Sunday, he spends time watching television and he does not drive and has given up his driver's license.[35] Plaintiff alleged that he could walk 30 to 40 yards, sit and stand for 30 minutes at a time and lift 10 pounds.[36]

Turning next to the medical evidence of record, the ALJ found that an August 10, 2010 MRI of Plaintiff's cervical spine revealed bilateral neural foraminal stenosis due to diffuse bulge

---

[30] AR p. 23; *See*, AR pp. 45-46.
[31] AR p. 23; *See*, AR p. 48.
[32] AR p. 23; *See*, AR pp. 48, 50.
[33] AR p. 23; *See*, AR p. 50.
[34] AR p. 23; *See*, AR pp. 54-55.
[35] AR p. 23; *See*, AR p. 55.
[36] AR p. 23; *See*, AR p. 56.

with annulus fibrosis with associated marginal osteophyte formation at C5-6, C6-7 and to a lesser degree C3-4.[37]  A lumbar spine MRI performed on the same date also documented the following: (1) at L4-L5, there was central and right paracentral herniated nucleus pulposus (5 mm) contributing to central vertebral canal stenosis (5 mm) in addition to impressing upon displacing the L5 nerve roots posteriorly bilaterally; (2) at L5-S1, there was central vertebral canal stenosis (7 mm) due to diffuse bulging annulus fibrosis with a focal central posterior protrusion (2 mm); (3) bilateral neuroforaminal stenosis at L4-L5 and L5-S1, and to lesser degree at L3-L4 and L2-L3 as a consequence of diffuse bulging annulus fibrosis at each of the above mentioned levels; and (4) bilateral facet arthropathy.[38]

The ALJ found that treatment notes from the Spine Diagnostic and Treatment Center (the "Spine Center"), revealed that Plaintiff presented on August 18, 2010 complaining of neck, back and left leg pain "since being in a motor vehicle accident (MVA) in July."[39]  According to the ALJ, the treatment notes show that Plaintiff had a history of chronic back and neck pain and that Plaintiff was doing well prior to the accident, but also that Plaintiff "had an MVA 22 years prior to the examination and had chronic pain since then treated with high dose narcotics."[40]  The treatment notes also show that Plaintiff stated the pain had completely and suddenly disappeared six months before the August 18, 2010 examination and that he was off all medications until the recent accident.[41]  The ALJ explained that although Plaintiff stated that he had been exercising and doing well in the months before the examination, on August 18, 2010 he was complaining of severe pain in the neck and back.  Plaintiff complained that the neck pain was worse than his back pain, and

---

[37] AR p. 24 (*citing* AR pp. 575-76).
[38] AR p. 24 (*citing* AR pp. 577-78).
[39] AR p. 24; *See*, AR pp. 271 and 499 (January 24, 2011 treatment note from the Spine Center).
[40] AR p. 24; *See*, AR pp. 271, 499.
[41] AR p. 24; *See*, AR pp. 271-72 and 499-500.

that his neck pain radiated into his left arm, while his back pain radiated into his left leg. However, Plaintiff stated that he had not had any procedures for the pain and that he had been taking Roxicodone, which helped minimally.[42] According to the ALJ, "The examining source reviewed the MRIs and indicated that the cervical spine MRI was pertinent for C3-4, C5-6 and C6-7 bilateral foraminal stenosis while the lumbar spine was pertinent for L4-5 and L5-S1 central and bilateral foraminal stenosis."[43]

The ALJ found that Plaintiff next presented to the Spine Clinic on September 15, 2010 for follow-up treatment after a September 3, 2010 cervical epidural steroid injection ("CESI").[44] The September 15, 2010 treatment note shows that Plaintiff reported that his arm pain and left leg pain had completely resolved since the CESI, but that he continued to have constant, aching pain in the neck that radiated up into his head.[45] Plaintiff also stated that his neck pain had completely resolved for about two days after the CESI, but that it had returned.[46]

The ALJ further found that the treatment notes from the Spine Center dated January 12, 2011 show Plaintiff was "status post bilateral C2-6 radiofrequency ablations (RFA)," and that Plaintiff reported "significant relief following the RFA on the left."[47] According to the January 12, 2011 treatment note, "The right side was only 5 days out so he was still having some burning and sensitivity of the skin over the neck on that side. He was tolerating his medications."[48]

---

[42] AR p. 24; *See*, AR pp. 272, 500.
[43] AR p. 24; *See*, AR pp. 272, 500.
[44] AR p. 24; *See*, AR pp. 271, 499.
[45] AR p. 24; *See*, AR pp. 271, 499.
[46] AR p. 24; *See*, AR pp. 271, 499.
[47] AR p. 24; *See*, AR p. 503; *See also*, AR p. 275 (undated treatment note that was both written by a medical assistant and electronically signed by a physician on January 12, 2011 and is identical to the January 12, 2011 note at AR pp. 503-506).
[48] AR p. 24; *See*, AR p. 503.

Plaintiff presented for follow-up treatment at the Spine Center on January 24, 2011, complaining of continued burning and soreness over the neck.[49]  The January 24, 2011 treatment note states that Plaintiff presented to ask about a small, non-painful nodule under the skin on the right side of the neck, which concerned Plaintiff because his sister had lymphoma.[50]  According to the treatment note, Plaintiff had no other symptoms, no weight loss, fatigue, malaise or other systemic signs or symptoms.[51]  On physical examination, Plaintiff demonstrated tenderness to palpation but no instability or laxity of the upper and lower extremities, normal muscle strength, normal coordination, no loss of sensation and he was continued on Roxicodone, Xanaflex, Mobic and Diovan.[52]

The ALJ found that from part of 2011 until the latter part of 2013, there was no medical evidence to show that Plaintiff continued to have any musculoskeletal issues after the RFA.[53]  The ALJ pointed out that during the October 23, 2014 administrative hearing, upon questioning by his counsel, Plaintiff stated that he stopped receiving treatment for his back in 2011 and that he was not currently going to the doctor, nor did he want to take pain medications for his condition.[54]  Plaintiff testified that he uses a heating pad, sits in a tub of hot water or lays flat on the sofa for pain relief.[55]  The ALJ noted that although Plaintiff did not seek treatment for his spine condition,

---

[49] AR p. 24; *See*, AR p. 271.

[50] AR p. 24; *See*, AR p. 271.

[51] AR p. 24 (*citing* AR pp. 499-500; AR p. 275).  Although the ALJ cites to Exhibit 1F at p.11 (AR p. 275), that treatment note does not contain a date and appears to be from Plaintiff's January 12, 2011 visit to the Spine Center, as the note was both written by a medical assistant and electronically signed by a physician on January 12, 2011.  *See*, AR p. 278.  The treatment note from Plaintiff's January 24, 2011 visit to the Spine Center is contained in the administrative record at AR pp. 271-274 (Exhibit 1F at pp. 7-10) and at AR pp. 499-502 (Exhibit 11F at pp. 6-9).

[52] AR p. 25 (*citing* AR p. 275).  The Court notes that the January 24, 2011 treatment note shows that Plaintiff was continued on Roxicodone and Xanaflex, but not Mobic and Diovan.  *See*, AR pp. 272-74 and pp. 500-02.

[53] AR p. 25.  The Court notes that the record contains a July 14, 2013 treatment note from the emergency center of Ochsner Medical Center, which states that Plaintiff presented for complaints of heat exposure and dizziness, but that Plaintiff left without being seen.  *See*, AR pp. 288-90.

[54] AR p. 25; *See*, AR pp. 50, 56.

[55] AR p. 25; *See*, AR p. 58.

he did seek treatment for his substance abuse and mental condition during this time.[56]  The ALJ also found that the hospital physical examinations did not indicate that Plaintiff persistently complained of or needed treatment for any significant musculoskeletal deficits.[57]

The ALJ further found that Plaintiff presented to the emergency room of Ochsner Medical Center ("Ochsner") on September 1, 2013 with back pain, stating it was a "new problem."[58] Plaintiff reported that the episode started several weeks prior to the emergency room visit, that the pain was present in the lumbar spine and that it was shooting and aching pain that did not radiate. Plaintiff also stated that the symptoms were aggravated by bending, twisting and certain positions, that the pain was always the same, but that there was no tingling or weakness.  Plaintiff stated that he had tried nonsteroidal anti-inflammatory drugs ("NSAIDs") for the symptoms, which provided no relief.  The physical exam revealed that Plaintiff had a normal range of motion of the neck and the lumbar spine.  However, with respect to the lumbar spine, there was tenderness to palpation along the bilateral paraspinal muscles, but no midline tenderness to palpation.  The physical examination also showed that Plaintiff had normal neurological strength and that he was mentally alert and oriented to person, place and time.  Plaintiff was diagnosed with back spasms, but refused pain medication, stating that he had undergone rehabilitation more than 20 times for narcotics abuse.[59]

The ALJ found that Plaintiff's next physical examination occurred on October 23, 2013 at the Baton Rouge Clinic and that the results were within normal limits.  The ALJ noted that Plaintiff

---

[56] AR p. 25; *See*, AR pp. 52-54.
[57] AR p. 25.
[58] AR p. 25; *See*, AR p. 292.
[59] AR p. 25 (*citing* AR pp. 293-94).

reported that he was working offshore at the time. The ALJ also pointed out that there was no complaint or treatment for any musculoskeletal issue during that examination.[60]

Because there was no additional evidence regarding Plaintiff's alleged musculoskeletal issue, Plaintiff submitted to an orthopedic examination with John Watermeier, M.D., on December 1, 2014.[61] The results of Dr. Watermeier's physical examination showed that Plaintiff was of normal height and weight, he walked with a stiff gait and used a cane for support, and there was no evidence of swelling. The ALJ found that Dr. Watermeier's examination of Plaintiff's cervical spine revealed a range of motion of about 50% and pain associated with forward flexion, backward extension and lateral rotation. There was also mild-to-moderate pain on axial compression. Although Plaintiff complained of numbness in the thumb and index finger, Dr. Watermeier opined that it was from using a cane. The ALJ found that Dr. Watermeier's examination of the thoracic spine revealed that there was no thoracic tenderness, although Plaintiff did have mild lumbar tenderness to palpation. Dr. Watermeier's examination showed that the range of motion in Plaintiff's lower back was about 75% of forward flexion, backward extension and lateral rotation. There was also negative straight-leg-raising bilaterally. Based on the foregoing, Dr. Watermeier's diagnosis was cervical and lumbar disc syndrome.[62]

Dr. Watermeier further found that Plaintiff was restricted to sitting a total of 90 minutes in an 8-hour workday and that he could stand and walk for a total of 60 minutes each in an 8-hour workday.[63] Dr. Watermeier found that Plaintiff could lift and carry 10 pounds frequently and 20 pounds occasionally.[64] Dr. Watermeier also found that Plaintiff required the use of a cane to

---

[60] AR p. 25 (*citing* AR pp. 308-09). The October 23, 2013 treatment note shows a diagnosis of unspecified essential hypertension, Hepatitis C and anxiety. AR pp. 308-09.
[61] AR p. 26 (*citing* AR pp. 757-67).
[62] AR p. 26; *See*, AR p. 758.
[63] AR p. 26; *See*, AR p. 762.
[64] AR p. 26; *See*, AR p. 761.

ambulate and that the use of a cane was medically necessary.[65]  The ALJ, however, found that the medical evidence did not support Dr. Watermeier's restrictions, as there was no prior medical evidence to suggest that Plaintiff needed a cane or that he had difficulty with standing and walking.[66]  The ALJ further found that Dr. Watermeier's findings upon clinical examination were minimal and that the restrictions appeared to reflect Plaintiff's subjective complaints rather than Dr. Watermeier's objective findings.  The ALJ pointed out that the most recent medical evidence of record prior to Dr. Watermeier's examination shows that on September 1, 2013, Plaintiff had a full range of motion in the spine.[67]

The ALJ further found that Plaintiff had a normal gait, as the September 10, 2014 treatment notes from Margaret Dumas Mental Health Center specifically noted that Plaintiff used no mechanical devices to assist walking.[68]  According to the ALJ, "There was no evidence to support that the claimant had any additional trauma post 2010 and his RFA treatment to indicate additional musculoskeletal deficits."[69]  The ALJ further found that in September 2013, Plaintiff stated that his back pain was a new occurrence, indicating it was not related to his prior MVA.  The ALJ also pointed out that Plaintiff failed to seek additional medical treatment after the follow-up visit in October 2013, when the results of his physical examination were normal.  The ALJ concluded that, "This suggests that the pain and limitations exhibited at the December 2014 examination may not be as debilitating as the claimant alleged."[70]  As such, the ALJ found that the limitations established by Dr. Watermeier were not supported by the medical evidence of record and, therefore, gave his opinion little weight.[71]

---

[65] AR p. 762.
[66] AR p. 26.
[67] *See*, AR p. 294.
[68] AR p. 26 (*citing* AR p. 741).
[69] AR p. 26.
[70] AR p. 26.
[71] AR p. 26.

The ALJ further found that a state agency medical consultant had reviewed the evidence at the initial level of adjudication and concluded that Plaintiff had a severe musculoskeletal impairment that restricted Plaintiff to medium exertional activity.  However, the ALJ explained that she had received additional evidence at the hearing level to support her finding that although Plaintiff is not disabled under the Social Security Administration standards, Plaintiff's condition restricted him to a wide range of light exertion rather than a full range of medium exertion.[72] Because Plaintiff's treatment records indicated significant degenerative changes in the cervical and lumbar spine, the ALJ assigned "significant but not great weight" to the opinion of the state agency medical consultant.[73]

Based on the foregoing, the ALJ concluded that the evidence "clearly shows" that while Plaintiff has some musculoskeletal problems, the evidence failed to demonstrate that his back problems were so acute as to be incapacitating.[74]  Although Plaintiff alleged that he needed a cane, the ALJ found no medical evidence to support a prescription for a cane.[75]  The ALJ also found that the available treatment records described Plaintiff's gait as normal and that there was no need for any assistive device.  Thus, the ALJ found that the treatment records indicated Plaintiff's reporting

---

[72] AR p. 26.

[73] AR pp. 26-27.

[74] AR p. 30.  The ALJ also reviewed the medical evidence of record regarding Plaintiff's allegations of bipolar disorder and substance abuse.  *See,* AR pp. 27-30.  The ALJ found that a November 7, 2013 treatment note from Our Lady of the Lake Regional Medical Center revealed that Plaintiff had been hospitalized approximately ten times for drug addiction since 2010.  AR p. 27.  The ALJ concluded that although Plaintiff had repeated detox treatment and hospitalizations for substance induced mental states, Plaintiff's recent treatment shows signs of bipolar disorder without evidence of substance abuse.  AR p. 29.  After reviewing the mental health and substance abuse records, the ALJ found that Plaintiff had the ability to engage in simple and routine work on a consistent and continuous basis defined as eight hours per day, five days a week.  AR p. 30.  The ALJ pointed out that during the October 23, 2014 administrative hearing, Plaintiff and his attorney acknowledged Plaintiff's substance abuse, but argued that the substance abuse was not what prevented Plaintiff from working.  *Id.*  The ALJ agreed with that conclusion and found that, "with or without the drug addiction and alcohol use the claimant would not be disabled, as the physical impairment is not disabling."  AR p. 30.  Because Plaintiff has not alleged any error in the ALJ's review of the mental health and substance abuse evidence of record, the undersigned does not address those records in this Report and Recommendation.

[75] The only information in the record to support this assertion is the Function Report that was completed by the Plaintiff.  *See,* AR p. 232.

of his condition was not accurate and, as such, could not be fully accepted.  The ALJ pointed out that although Plaintiff had alleged that he has difficulty with engaging in personal care activities,[76] Plaintiff informed his treating source that he had no difficulty doing these things.

The ALJ further found that although the medical examinations revealed some occasional deficits in Plaintiff's range of motion, Plaintiff's ability to function was far greater than he alleged, as there was no evidence of any persistent sensory or motor deficit, or muscle spasms.  The ALJ found that there was also no evidence of recent radiculopathy.  As such, the ALJ found that Plaintiff was capable of engaging in a wide range of light exertion, but that he would have restrictions in overhead reaching and working on vibrating surfaces.[77]  Specifically, the ALJ determined that Plaintiff has the RFC to perform light work with the following nonexertional limitations: "no climbing of ladders, ropes, or scaffolds.  The claimant can occasionally stoop, kneel, crouch, crawl and occasionally engage in overhead reaching.  The claimant cannot work on vibrating surfaces.  The work would have to be of a simple routine nature."[78]

A review of the record shows that the ALJ's RFC determination that Plaintiff can perform light work with certain nonexertional limitations is supported by substantial evidence.  Specifically, the RFC determination is supported by the objective medical evidence of record.  As the ALJ explained, the most recent treatment notes from before Dr. Watermeier's December 1, 2014 assessment show that Plaintiff did not use any mechanical devices to assist with walking when he saw Patricia M. Graham, M.D. at Margaret Dumas Mental Health Center on September 10, 2014.[79]  The objective medical evidence also shows that on November 7, 2013, Plaintiff was "able to move all the extremities freely" during a physical examination conducted at Our Lady of

---

[76] AR p. 30 (*citing* AR p. 227).
[77] AR p. 30.
[78] AR p. 22.
[79] AR p. 741.

the Lake Regional Medical Center.[80]  The objective medical evidence also shows that Plaintiff had a normal range of motion in his neck and musculoskeletal system during an October 23, 2013 physical examination at the Baton Rouge Clinic[81] and during a September 1, 2013 physical examination at Ochsner.[82]

While the treatment notes from the Spine Center dated August 18, 2010 to January 24, 2011 show that Plaintiff complained of pain in his neck and back, there is no indication that Plaintiff had any limitations with respect to his ability to sit, stand or walk.[83]  According to the January 24, 2011 treatment note, a physical examination revealed that Plaintiff had a "moderately antalgic" gait, but that Plaintiff had a "full and pain free" range of motion in his extremities, "no obvious instability or laxity in all four extremities" and Plaintiff's bilateral upper and lower strength was normal and symmetric.[84]  The ALJ's RFC determination is also supported by the February 12, 2014 opinion of Craig Billinghurst, M.D., the state agency medical consultant, who reviewed the available medical evidence and concluded that Plaintiff was physically capable of performing "MED level of work."[85]  Accordingly, the ALJ's RFC assessment is supported by substantial objective medical evidence.

Further, the ALJ did not err by rejecting Dr. Watermeier's December 1, 2014 assessment as unsupported by the medical evidence of record.  Dr. Watermeier's assessment consists of a form on which Dr. Watermeier checked boxes to indicate Plaintiff's functional abilities and limitations.[86]  In the assessment, Dr. Watermeier checked boxes to indicate that Plaintiff could "frequently" lift and carry up to 10 pounds and could "occasionally" lift and carry up to 20

---

[80] AR p. 335.
[81] AR pp. 309.
[82] AR p. 294.
[83] *See*, AR pp. 271-85.
[84] AR p. 274.
[85] AR p. 87.
[86] AR pp. 761-66.

pounds.[87]  Dr. Watermeier also wrote that Plaintiff could sit, stand and walk for 30 minutes at a time and that during an eight-hour workday, Plaintiff could sit for a total of 90 minutes, stand for a total of 60 minutes and walk for a total of 60 minutes.[88]  When asked to provide "the particular medical or clinical findings" that supported his assessments, Dr. Watermeier provided the same explanation for each assessment: "Cervical Lumbar Radiculopathy."[89]  No further explanation was provided.  Dr. Watermeier also checked boxes to indicate that Plaintiff requires the use of a cane to ambulate and that the use of a cane was medically necessary.[90]  Again, the only support given for these assessments is, "Cervical Lumbar Radiculopathy."[91]

As the ALJ pointed out in her February 27, 2015 decision, Dr. Watermeier's assessment regarding the limitations on Plaintiff's ability to sit, stand and walk and his need to use a cane is not supported by the objective medical evidence of record, as none of Plaintiff's other treating or examining physicians opined that Plaintiff had such limitations.  Further, Dr. Watermeier did not provide any clinical justification for the limitations mentioned in his assessment.  "It is well-established law that the ALJ is entitled to accord little or even no weight to similar 'check-the-box' forms." *Tims v. Colvin*, Civ. A. No. 16-70-EWD, 2017 WL 3996404, at *6 (M.D. La. Sept. 11, 2017) (quoting *Johnson v. Soc. Sec. Administration*, Civ. A. No. 15-4811, 2016 WL 6902115, at *4 (E.D. La. Sept. 23, 2016), *report and recommendation adopted*, 2016 WL 6892878 (E.D. La. Nov. 23, 2016)); *See, Rollins v. Astrue*, 464 Fed. Appx. 353, 357 n. 5 (5th Cir. 2012) (noting that "check-the-box" forms without additional explanations might be given less weight but reserving that determination for the ALJ); *Foster v. Astrue*, 410 Fed. Appx. 831, 833 (5th Cir. 2011) (finding

---

[87] AR p. 761.
[88] AR p. 762.
[89] *See*, AR pp. 761-766.
[90] AR p. 762.
[91] *Id.*

good cause to assign little weight to a treating physician's questionnaire opinion "due to its brevity and conclusory nature, lack of explanatory notes, or supporting objective tests and examination . . . .").  Because Dr. Watermeier's December 1, 2014 assessment is a check-the-box form and the limitations assessed therein are not supported by the objective medical evidence of record, the ALJ did not err by giving little weight to Dr. Watermeier's December 1, 2014 assessment.[92]

Moreover, in asserting that the ALJ erred by failing to give sufficient weight to Dr. Watermeier's December 1, 2014 assessment, Plaintiff is essentially asking this Court to reweigh the evidence of record.  However, the case law is clear that in applying the substantial evidence standard the Court must review the entire record as a whole, but may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision.  *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).  Conflicts in the evidence are for the ALJ to decide and in the instant case, the ALJ resolved such conflicts in favor of finding that Plaintiff's ability to work is not limited by his alleged inability to stand, sit or walk for more than 30 minutes at a time.  As shown above, the ALJ's RFC determination is supported by substantial evidence and the ALJ did not commit reversible error by rejecting the December 1, 2014 assessment by Dr. Watermeier.

To the extent Plaintiff asserts that the ALJ should have re-contacted Dr. Watermeier in accordance with 20 C.F.R. § 404.1512(e) to discuss his findings and the restrictions he placed on Plaintiff,[93] the clarification rule was repealed in 2012.  *Brooks v. Comm'r of Soc. Sec.*, Civ. A. No.

---

[92] Further, Dr. Watermeier's finding of Plaintiff's work status as "Disabled" is not entitled to any weight.  *See*, AR p. 759.  The Fifth Circuit has held that, "Among the opinions by treating doctors that have no special significance are determinations that an applicant is 'disabled' or 'unable to work.'  20 C.F.R. § 404.1527(e)(1).  These determinations are legal conclusions that the regulation describes as 'reserved to the Commissioner.'"  *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).  *See also*, *Alejandro v. Barnhart*, 291 F. Supp. 2d 497, 506 (S.D. Tex. 2003) ("Nonetheless, opinions on ultimate issues, such as disability status under the regulations are reserved exclusively to the ALJ.  20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1).  Statements by medical sources to the effect that a claimant is 'disabled' are not dispositive, but an ALJ must consider all medical findings and evidence that support such statements.  *Id.*").
[93] R. Doc. 10 at p. 18.

15-2280, 2016 WL 6436791, at *10 (W.D. La. Sept. 26, 2016) (*citing* How We Collect and Consider Evidence of Disability, 77 FR 10651-01 (February 23, 2012) (effective March 26, 2012)). Thus, Plaintiff's argument lacks merit.

### 2. Dr. Brandt's Medical Source Opinion

In his first assignment of error, Plaintiff asserts that the ALJ erred by failing to consider, or even acknowledge, the medical source opinion provided by Plaintiff's treating physician, Harold Brandt, M.D.[94]   On October 1, 2014, Dr. Brandt completed a two-page form regarding Plaintiff's functional capacity, finding that Plaintiff was unable to engage in prolonged sitting or standing and was limited to doing each for 30 minutes at a time due to pain/discomfort.[95]   Dr. Brandt found that Plaintiff could alternate between sitting and standing for 30 minutes before needing to stop and take a rest break to lie down for 30 minutes or longer.[96]   Dr. Brandt also checked boxes to indicate that Plaintiff could rarely use his arms and hands for reaching and grasping/gross manipulation of very small objects and objects weighing 10 pounds or less in front of him and to indicate that Plaintiff could rarely to never use his head/neck for looking down at a desk or table to perform work activity due to pain.[97]   When asked how long Plaintiff has been limited in these ways, Dr. Brandt wrote, "per patient since 18 y/o but has gotten progressively worse."[98]   Plaintiff argues that the ALJ's failure to consider or weigh Dr. Brandt's medical opinion constitutes reversible error because Social Security Ruling 96-2p requires an ALJ to address all medical opinions as to the nature, severity and residual functional capacity of a claimant, weigh these opinions against other opinions and the objective medical evidence of record and provide a

---

[94] R. Doc. 10 at pp. 14-16.
[95] AR p. 755.
[96] *Id*.
[97] AR p. 756.
[98] *Id*.

detailed explanation of the reason for such weight.[99]  Plaintiff further asserts that this case should be remanded for consideration of Dr. Brandt's medical opinion, which is consistent with Dr. Watermeier's opinion and supported by both the medical evidence of record and Plaintiff's testimony.[100]

The Commissioner asserts that the ALJ's failure to address Dr. Brandt's October 1, 2014 opinion does not constitute reversible error because Dr. Brandt is not a treating physician.[101]  The Commissioner points out that Plaintiff has not presented any evidence from Dr. Brandt other than the two-page, unsupported opinion.  The Commissioner further asserts that the only references to Dr. Brandt in the administrative record include Plaintiff's testimony during the October 23, 2014 administrative hearing that his mother had paid for him to visit Dr. Brandt[102] and a June 2014 medical record from the Baton Rouge Clinic noting, "Patient to see Dr. Brandt prior to next medication refill."[103]  To the extent Dr. Brandt is a treating source with the Baton Rouge Clinic, the Commissioner asserts that the ALJ reviewed those treatment notes and concluded that they show Plaintiff was not as restricted during the adjudicated period as Dr. Brandt indicated in his October 1, 2014 opinion.  As such, the Commissioner maintains that the ALJ's RFC determination is supported by substantial medical evidence.

### a. The Treating Physician Rule

Under the regulations, a "treating source" is defined as a medical source that has or has had "an ongoing treatment relationship" such that the medical evidence shows that Plaintiff sees or has seen "the source with a frequency consistent with accepted medical practice for the type of

---

[99] R. Doc. 10 at p. 15 (*citing* SSR 96-2p, 1996 WL 362211; 61 FR 34490-01 (July 2, 1996)).
[100] R. Doc. 10 at p. 16.
[101] R. Doc. 12 at p. 5.
[102] R. Doc. 12 at p. 5 (*citing* R. Doc. 10 at p. 5; AR p. 57).
[103] R. Doc. 12 at p. 5 (*citing* AR p. 584).

treatment." 20 C.F.R. § 404.1502. Where no such longitudinal pattern of care is shown, the Fifth

Circuit has held that an ALJ is not required to give that professional's opinion greater weight. *See,*

*Clayborne v. Astrue*, 260 Fed. Appx. 735, 737 (5th Cir. 2008) (doctor properly rejected as treating

source where "isolated visits" did not amount to an "ongoing treatment relationship" with doctor);

*Taylor v. Astrue*, 245 Fed. Appx 387, 391 (5th Cir. 2007) ("Taylor's two visits to Dr. Weisberg,

four years apart, are the sort of 'individual examinations' that are distinguished . . . from the

continuous care provided by a treating physician."); *Hernandez v. Heckler*, 704 F.2d 857, 860–61

(5th Cir. 1983) (doctor who only saw claimant twice in a 17-month period was not a treating

physician).

Generally, the "opinion of the treating physician who is familiar with the claimant's

impairments, treatments and responses, should be accorded great weight in determining

disability." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *see also*, 20 C.F.R. §

404.1527(c)(1) (examining physician opinion given more weight than non-examining

physician).[104] "Absent reliable medical evidence from a treating or examining physician

controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating

---

[104] For claims filed on or after March 27, 2017, the federal regulations provide:

> We will not defer or give any specific evidentiary weight, including controlling
> weight, to any medical opinion(s) or prior administrative medical finding(s),
> including those from your medical sources. When a medical source provides one
> or more medical opinions or prior administrative medical findings, we will
> consider those medical opinions or prior administrative medical findings from that
> medical source together using the factors listed in paragraphs (c)(1) through (c)(5)
> of this section, as appropriate. The most important factors we consider when we
> evaluate the persuasiveness of medical opinions and prior administrative medical
> findings are supportability (paragraph (c)(1) of this section) and consistency
> (paragraph (c)(2) of this section). We will articulate how we considered the
> medical opinions and prior administrative medical findings in your claim
> according to paragraph (b) of this section.

20 C.F.R. § 404.1520c. Because Plaintiff's claim was filed prior to March 27, 2017, the treating physician rule set
forth in 20 C.F.R. § 404.1527 controls.

physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Newton*, 209 F.3d at 453.[105]  However, the ALJ may reject the treating source's opinion without considering each of the six factors set forth in *Newton* when "there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another." *Walker v. Barnhart*, 158 Fed. Appx. 534, 535 (5th Cir. 2005) (quoting *Newton*, 209 F.3d at 458).  When the record contains medical evidence from multiple treating sources, the ALJ is "not required to go through all six steps in *Newton* [because] . . . the ALJ is responsible for resolving conflicts in the evidence, and we will not substitute our judgment for his." *Cain v. Barnhart*, 193 Fed. Appx. 357, 360 (5th Cir. 2006) (citing *Newton*, 209 F.3d at 452, 458; *Walker*, 158 Fed. Appx. at 534)).  Further, "the ALJ may give 'less weight, little weight, or even no weight' to the opinion of a treating physician upon a showing of good cause." *Ray v. Barnhart*, 163 Fed. Appx. 308, 313 (5th Cir. 2006) (quoting *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001)).

While the Court agrees that generally, an examining physician's opinion should be accorded great weight, the ALJ's decision to not give any weight to Dr. Brandt's October 1, 2014 medical opinion is supported by substantial evidence and, therefore, is not a ground for reversal or remand.  As an initial matter, a review of the record in this case does not support Plaintiff's assertion that Dr. Brandt is a "treating physician" whose medical opinion is entitled to controlling weight.  As the Commissioner points out, the administrative record does not contain any treatment notes from Dr. Brandt other than his October 1, 2014 assessment, which Plaintiff's counsel

---

[105] Those criteria provide that the ALJ consider: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the relevant evidence supporting the opinion; (4) consistency of the treating physician's opinion with the record as a whole; (5) whether the opinion is that of a specialist; and (6) other factors which tend to support or contradict the opinion.  20 C.F.R. § 404.1527(d)(2).

submitted to the ALJ the day after the October 23, 2014 administrative hearing.[106]  Further, the administrative record contains only two references to Dr. Brandt.  The first is Plaintiff's testimony at the October 23, 2014 administrative hearing stating that, "My mom pays for my doctor visits as of now," and that she was paying for him to visit Dr. Brandt, a "family doctor."[107]  The second reference to Dr. Brandt is contained in an August 10, 2014 treatment note from the Baton Rouge Clinic, which states that Plaintiff "was seen today for establish care and medication refill," and that, "Patient to see Dr. Brandt prior to next medication refill."[108]  Thus, the record is devoid of any objective medical evidence establishing the "longitudinal" pattern of care described in 20 C.F.R. § 404.1527(d)(2) with respect to "treating physicians."  *Taylor v. Astrue*, 245 Fed. Appx. 387, 391 (5th Cir. 2007).  At most, the record establishes that Plaintiff was seen by Dr. Brandt on one occasion, in connection with the issuance of Dr. Brandt's October 1, 2014 assessment.  Accordingly, the ALJ did not err by failing to give Dr. Brandt's October 1, 2014 opinion controlling weight.

Further, to the extent that Dr. Brandt's October 1, 2014 opinion constitutes a medical opinion from a non-treating source, the ALJ's failure to consider or weigh the opinion does not constitute reversible error because the opinion is not supported by the medical evidence of record.  "The law is clear that, although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion. 20 C.F.R. § 404.1526 (1980)."  *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981).  "[W]here the examining physician is

---

[106] *See*, AR pp. 753-756.  In the attached letter dated October 24, 2014, Plaintiff's counsel describes the assessment as "a **treating source written, signed, and dated medical opinion from Mr. Bueche's treating internist, Harold Brandt, MD with the Baton Rouge Medical Clinic, dated 10/1/14**, which we just discovered in a box detached from our file for Mr. Bueche."  AR p. 753 (emphasis in original).
[107] AR p. 57.
[108] AR p. 584.

not the claimant's treating physician and where the physician examined the claimant only once, the level of deference afforded his opinion may fall correspondingly." *Rodriguez v. Shalala*, 35 F.3d 560, at *2 (5th Cir. 1994) (unpublished) (citing *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990)). Further, "If the evidence supports a contrary conclusion, an opinion of ***any*** physician may be rejected." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (emphasis added); *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1981) (per curiam).

For the same reasons that we found the ALJ did not err in giving little weight Dr. Watermeier's December 1, 2014 assessment, the ALJ also did not err in failing to acknowledge or give any weight to Dr. Brandt's October 1, 2014 assessment. Like Dr. Watermeier, Dr. Brandt used a two-page form in which he checked boxes to indicate Plaintiff's functional abilities and physical limitations. Dr. Brandt checked boxes to indicate that Plaintiff is unable to engage in prolonged sitting or standing and that Plaintiff could engage in prolonged sitting or standing for only "about 30 minutes without having to rest or stand due to pain."[109] Dr. Brandt also checked a box to indicate that Plaintiff was unable to "alternate between sitting and standing for 8-hour periods of time each day without having to take rest breaks to lie down due to symptoms of severe pain."[110] When asked how long Plaintiff could alternate positions before needing to stop and take a rest break to lie down for 30 minutes or more, Dr. Brandt wrote "30 minutes" and the reason provided was, "pain/discomfort."[111] Dr. Brandt checked boxes to indicate that Plaintiff could rarely use his arms and hands for reaching and grasping/gross manipulation of very small objects and objects weighing ten pounds or less, and the reason provided for these assessments was, "pain."[112] Dr. Brandt also checked a box to indicate the Plaintiff could rarely to never use his

---

[109] AR p. 755.
[110] *Id.*
[111] *Id.*
[112] AR p. 756.

head/neck for looking down at a desk or table to perform work activity, and his reason was "pain & radiculopathy."[113]  Finally, when asked how long Plaintiff had been limited in these ways, Dr. Brandt wrote, "per patient since 18 y/o but has gotten progressively worse."[114]

As with Dr. Watermeier's December 1, 2014 assessment, Dr. Brandt's October 1, 2014 assessment is not supported by the objective medical evidence of record.  Like Dr. Watermeier, Dr. Brandt's opinion that Plaintiff could only sit and stand for 30 minutes at a time before needing to take a rest break to lie down for 30 minutes or more is not supported by the objective medical evidence of record, as none of Plaintiff's other treating or examining physicians opined that Plaintiff had such limitations.  Dr. Brandt also did not provide any clinical justification for the limitations mentioned in his assessment.  The only reason given for Dr. Brandt's assessed limitations was "pain."  Further, unlike Dr. Watermeier, when Dr. Brandt was asked how long Plaintiff had been limited by these physical limitations, Dr. Brandt wrote, "Per patient since 18 y/o but has gotten progressively worse"[115] Thus, rather than basing his assessment on his own physical examination or observations of Plaintiff, it appears Dr. Brandt based his assessment on Plaintiff's subjective complaints of pain.  Additionally, Dr. Brandt's October 1, 2014 assessment is essentially a check-the-box form.  As previously discussed, the ALJ is entitled to accord little or no weight to such "check-the-box forms."  *See*, *Tims*, 2017 WL 3996404, at *6; *Rollins*, 464 Fed. Appx. at 357 n. 5; *Foster*, 410 Fed. Appx. at 833.  As such, Dr. Brandt's assessment was not entitled to any weight and the ALJ did not err by not mentioning the assessment in her February 27, 2015 decision.

---

[113] *Id.*
[114] *Id.*
[115] AR p. 756.

## <u>RECOMMENDATION</u>

For the reasons set forth herein, it is the recommendation of the Magistrate Judge that under sentence four of 42 U.S.C. § 405(g), the final decision of the Acting Commissioner of Social Security, Carolyn W. Colvin, denying the applications for disability insurance benefits and supplemental security income benefits filed by plaintiff, John Ray Bueche, be **AFFIRMED** and this action be **DISMISSED WITH PREJUDICE.**

Signed in Baton Rouge, Louisiana, on December 29, 2017.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**